UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEANDRE JAMAAL BARNES,

                Petitioner,               Case No. 1:21-cv-776

v.                                    Honorable Jane M. Beckering

RANDEE REWERTS,

                Respondent.

_____/

## OPINION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Deandre Jamaal Barnes is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On February 19, 2019, following a one-day jury trial in the Muskegon County Circuit Court, Petitioner was convicted of one count of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On April 10, 2019, the court sentenced Petitioner to a prison term of 25 to 48 years. The 25-year minimum was mandatory under the CSC-I statute because of the age of the victim.

      On September 7, 2021, Petitioner filed his habeas corpus petition raising five grounds for relief, as follows:

    I.     [Petitioner] was denied a fair trial by the prosecutor's misconduct in eliciting, without having giv[en] notice, other acts testimony.

    II.    [Petitioner] was denied due process and a fair trial where in this trial[,] which was a credibility contest . . ., the prosecutor[] vouch[ed] for the credibility of his witness and the prosecution[] delay[ed] in bringing a motion to amend the information until after [Petitioner] decided to exercise [his] constitutional right to a trial.

III.    The trial court violated [Petitioner's] due process rights by providing the jury with confus[ing] instructions.

IV.    [Petitioner's] 25-year mandatory minimum sentence is disproportionate, unreasonable, and constitutes cruel and/or unusual punishment.

V.    Inaccuracies in [Petitioner's] guidelines violate[d] [his] state and federal constitutional rights.

(Pet., ECF No. 1, PageID.6–12.) Respondent asserts that Petitioner's grounds for relief are meritless.[1] (ECF No. 8.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> This case arose from allegations that defendant sexually abused his stepsister. The victim testified at trial that she was born in January 2000, and she knew defendant for her entire life. The victim stated that defendant was seven years older than her, and defendant testified that he was born in June 1993. The victim testified that her mother and father were never married, and she split time living with each parent. The victim testified that her father lived with defendant, and defendant's mother,

---

[1] Respondent also contends that Petitioner's first and third grounds for relief are procedurally defaulted. (ECF No. 8, PageID.114–115.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, the Court finds that judicial economy counsels that the better approach is to go directly to a discussion of the merits of Petitioner's claims.

whom her father had married. The victim stated that her stepsister and half sister also lived with her father, his wife, and defendant at times.

The victim testified that her father's family lived in a house on Jefferson Street when she was seven or eight years old. The victim stated that defendant first began touching her private areas over her clothes at the Jefferson Street house, which he did about a dozen times. The victim testified that her father's family moved to a house on Columbia Street when she was about eight years old, and they lived there until she was 10 years old. The victim stated that defendant began to touch her under her clothes at the Columbia Street house, and he eventually penetrated her vagina with his fingers. The victim testified that defendant did this between 20 and 50 times over a few months.

According to the victim, a few months after her father's family moved to the Columbia Street house, defendant began to penetrate her with his penis. The victim stated that defendant penetrated her with his penis on a weekly basis, and the incidents of penetration continued after her father's family moved to a house on Roberts Street in 2011 and then to a house on Commerce Street in 2013. The victim recalled that, while her father and his wife were on vacation for about a week after moving to the Commerce Street house, defendant penetrated her every night that they were gone. The victim stated that defendant's sexual abuse ended in 2015, when defendant moved.

The victim testified that she did not tell anyone about defendant's sexual abuse until 2018 because she was scared. The victim stated that after she told her stepsister and half sister about defendant's abuse, they all met with defendant's mother at her house to have a family meeting and inform defendant's mother of the abuse. The victim testified that, they all confronted defendant about the sexual abuse over the phone during the family meeting. The victim stated that defendant initially denied the accusations that he raped her, but he later came to the family meeting after the victim texted him that she needed closure, and he apologized. The prosecutor introduced a copy of a text message from defendant to the victim in which the defendant stated that he was young and dumb and that he was sorry.

Defendant testified that, when he arrived at his mother's house, he told his mother, sisters, and the victim that "when [he] was 14 and [the victim] was eight, [he] touched her. [He] touched her several times and that was it." He denied that he ever touched her again after the age of 14. Defendant clarified that, when he touched the victim, he rubbed her vaginal area and her breasts over her clothes. Defendant stated that he did this on several occasions while living in the Jefferson Street house in 2008. Defendant admitted that the victim's description of the first time that he touched her over her clothes was accurate. However, defendant denied ever touching the victim under her clothes or penetrating her with his penis.

The victim stated that defendant apologized at the family meeting for hurting her. The victim denied that defendant specified that he was only apologizing for touching her over her clothes when he was 14 years old. The victim's sisters agreed

3

that defendant did not specifically admit to touching the victim over her clothes when he was 14 years old, rather he simply apologized for hurting the victim without qualification or clarification. The victim reported defendant's abuse to the police, and defendant was charged with CSC-I.

*People v. Barnes*, No. 349652, 2020 WL 7754173, at *1–2 (Mich. Ct. App. Dec. 29, 2020).

Jury selection for Petitioner's trial began on February 19, 2019. (Trial Tr. I, ECF No. 9-2.) Over the course of one day, the jury heard testimony from numerous witnesses, including the victim, the victim's stepsister, the victim's younger sister, Petitioner's mother, and Petitioner himself. (Trial Tr. II, ECF No. 9-3.) After about four hours of deliberating, the jury reached a guilty verdict on February 20, 2019. (Trial Tr. III, ECF No. 9-4, PageID.590–591.) Petitioner appeared before the trial court for sentencing on April 10, 2019. (ECF No. 9-5.)

Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising the same five issues he raises in his habeas petition. One of Petitioner's challenges related to the scoring of offense variables for application of the Michigan sentencing guidelines. The court of appeals agreed with Petitioner, at least in part on that issue, and ordered a remand so the lower court could perform the "ministerial task of correcting the [presentence investigation report]" regarding the point score for number of penetrations. *Id*. at *7. Nonetheless, because Petitioner was sentenced pursuant to a statutory mandatory minimum, rather than a minimum within the guidelines range, the appellate court affirmed Petitioner's conviction and sentence. *Id.* Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising the same grounds he raises in this habeas action. (ECF No. 9-7, PageID.713–724.) The Michigan Supreme Court denied leave to appeal on July 6, 2021. (*Id.*, PageID.712.) This § 2254 petition followed.

4

## II.      AEDPA Standard

The Antiterrorism and Effective Death Penalty Act (AEDPA) "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I—Other Acts Evidence

Petitioner first contends that he was denied a fair trial because the prosecutor "gave no notice of intent to introduce evidence of other crimes, wrongs, or acts." (ECF No. 1, PageID.6.) Petitioner argues that the prosecution gave no advance notice of its intent to admit such evidence and failed to provide "good cause for having ignored the notice requirement." (*Id.*)

The court of appeals rejected Petitioner's argument, concluding that the evidence was properly admitted under state law and that any deficiency in notice had not prejudiced Petitioner.

*Barnes*, 2020 WL 7754173, at *2–3. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Of course, it is not inconceivable that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. But "state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme

8

Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the evidence at issue, regardless of whether it was covered by Rule 404(b). *See Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (concluding that even if the trial court violated Michigan Rule of Evidence 404(b), such "'garden-variety' character-evidence error does not 'cross the constitutional threshold' of due process"). Indeed, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

9

Because Petitioner has failed to demonstrate that the court of appeals' rejection of this claim is contrary to, or an unreasonable application of clearly established federal law, Petitioner is not entitled to relief on habeas ground I.[2]

### B.    Ground II—Prosecutorial Misconduct

Petitioner next argues that he was denied due process and a fair trial because the prosecutor engaged in misconduct: (1) he vouched for the credibility of the victim; and (2) he delayed in bringing a motion to amend the information until after Petitioner decided to exercise his right to a trial. (ECF No. 1, PageID.7.) For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact

---

[2] On direct appeal, Petitioner asserted that counsel was ineffective for failing to object to the other-acts evidence. *Barnes*, 2020 WL 7754173, at *5. The court of appeals disagreed, concluding that counsel was not ineffective for failing to make a futile objection for the reasons set forth in its discussion of the propriety of the other-acts evidence. *Id.* Respondent here notes that Petitioner makes no reference to an ineffective assistance claim in his § 2254 petition. (ECF No. 8, PageID.134 n.1.) Petitioner disagrees, noting that an ineffective assistance claim should have been "interpreted as having been included by reference to the 'Table of Contents' found in the Brief that was filed in the Michigan Court of Appeals which does contain a claim of ineffective assistance of counsel." (ECF No. 10, PageID.774.) Even if an ineffective assistance of counsel claim is properly before this Court, Petitioner merely reiterates the arguments that he raised before the court of appeals. As set forth above, he has not demonstrated that counsel could have raised a colorable objection to this evidence on state-law grounds or based on the federal constitution. Any objection, therefore, would have lacked merit. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Under *Strickland v. Washington*, 466 U.S. 668 (1984), the clearly established federal law regarding ineffective assistance of counsel claims, Petitioner must show that counsel's failure to object was professionally unreasonable and prejudicial. Because he cannot satisfy either requirement, his ineffective assistance of counsel claim necessarily fails.

of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations' . . . ." *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

### 1.      Vouching

Petitioner contends that the prosecutor engaged in vouching with respect to the victim. The Sixth Circuit has identified two types of objectionable vouching. *See United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019); *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008). *But see Wogenstahl v. Mitchell*, 668 F.3d 307, 328–29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard). The first type impermissibly places the government's prestige behind the witness to bolster his or her credibility. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 2019); *United States v. Carroll*, 26 F.3d 1380, 1388–89 (6th Cir. 1994). The second type, also known as bolstering, occurs when the prosecutor invites the jury to believe there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965). But not every reference to the credibility of a witness is objectionable vouching. "[A] prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented . . . ." *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019).

The court of appeals carefully examined each statement that Petitioner characterized as objectionable vouching:

> In this case, defendant argues that the prosecutor "continually vouched for the credibility of his witnesses [during closing arguments] and stated that [defendant] was lying until finally defense counsel objected." During closing arguments, the

prosecutor argued that defendant's claim that he touched the victim over her clothes but did not penetrate her was not true. Then, the prosecutor stated that one thing that the jurors would need to consider regarding the trial court's jury instructions, was "that there's no reason for [them] to require any other evidence other than [the victim] and she is to be believed because she's telling the truth. And we don't have to prove that [the victim] resisted in any way." The prosecutor correctly stated, and the trial court did in fact instruct the jury, that it was "not necessary that there be evidence other than the testimony of [the victim]" and that "the prosecutor does not have to prove that [the victim] resisted the defendant."

During closing argument, the prosecutor also explained the fact that the jury could find defendant guilty of the lesser included offense of second degree criminal sexual conduct (CSC-II), rather than CSC-I, as follows:

> The real difference between the two are penetration, did he have intercourse with her. Second degree requires sexual conduct. First degree, penetration. But don't—don't let [defendant]'s confession on the stand yesterday sway you at all from the fact that there was penetration. He's claiming that when he was 14 years old he molested her, but he never penetrated her. So that—that is not true, okay? That was only at the beginning. That wasn't the end game for him. That was for breaking down resistence [sic]. The ultimate game was intercourse with [the victim]. That was the ultimate goal, and that's what it began with with [sic] his confession, convenient confession.

> So there's a few other things to consider in this case. One is that with regard to these instructions, one is that there's no reason for you to require any other evidence other than [the victim] and she is to be believed because she's telling the truth. And we don't have to prove that [the victim] resisted in any way.

*Barnes*, 2020 WL 7754173, at *4. But the court concluded that the argument was not improper:

> A prosecutor may argue all reasonable inferences that arise from the evidence offered at trial, "and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich. App. at 66. Although "a prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness," the prosecutor "may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witness the jury believes." *People v. Thomas*, 260 Mich. App. 450, 455; 678 N.W.2d 631 (2004).

* * *

> The prosecutor was permitted to argue that the victim had no reason to lie about her accusations against defendant, and that defendant was lying on the basis of the reasonable inferences drawn from the evidence that defendant's partial confession was a convenient tactic to avoid being convicted of a more severe offense. See *id.*;

12

> *Dobek*, 274 Mich. App. at 66. The prosecutor could also infer that defendant made up his version of events to explain his apology to the victim despite the contradictory accounts made by the other witnesses. See *id.* No comment on the victim's credibility versus defendant's credibility suggested that the prosecutor had some special knowledge of their actual truthfulness. See *Thomas*, 260 Mich. App. at 455.

*Id*.

Petitioner does not present to this Court any argument regarding this issue other than the argument that appears in his state-court appellate briefs. That argument necessarily predates the court of appeals opinion and, therefore, does not explain how the court of appeals' analysis is in error.[3] Nor does it explain how the court of appeals analysis it contrary to, or an unreasonable application of, the general standard of *Darden* or *Donnelly*. This Court's review of the court of appeal's determination of the issue reveals that the state court's decision is entirely consistent with the clearly established federal law of *Darden* and *Donnelly*.

Moreover, even if there was some flaw in the prosecutor's argument—some element of improper vouching—the court of appeals concluded that Petitioner suffered no prejudice because "the trial court twice instructed the jury that the attorneys' statements and arguments were not evidence, and the jury was presumed to have followed these instructions." *Barnes*, 2020 WL 7754173, at *5. That determination is also entirely consistent with clearly established federal law. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (stating that "[a] jury is presumed to follow its instructions").

For all of these reasons, the prosecutor's closing arguments did not deny defendant a fair trial or improperly affect the outcome of the proceedings.

---

[3] Petitioner's application for leave to appeal to the Michigan Supreme Court simply relied on Petitioner's court of appeals' brief with regard to the prosecutorial misconduct issue. (ECF No. 9-7, PageID.715.)

### 2.   Amendment of the Information

The original information charged Petitioner with CSC-I based on his engagement in sexual penetration with a victim under age 13. (Information, ECF No. 9-6, PageID.707.) That document did not make mention of Petitioner's age at the time he committed the offense. But the information disclosed that Petitioner's conduct constituted CSC-I under multiple variables of the statute. (*Id*.)

Four months later—at a time that, according to Petitioner, plea negotiations had been concluded—the prosecutor amended the information to state that Petitioner was 17 years of age or older when he committed the penetration. (Am. Information, ECF No. 9-6, PageID.708.) That change was significant in that conviction of that offense carried a mandatory minimum sentence of 25 years' imprisonment. (*Id*.)

The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See, e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id*. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so

14

that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Petitioner does not suggest that he did not have sufficient notice such that his defense was impaired. In that regard, the amended information likely benefitted Petitioner in the preparation of his defense because it narrowed the list of multiple variables giving rise to criminal culpability under the CSC-I statute to just one: penetration by a person 17-years-old or older of a person younger than 13-years-old. That particular means of describing Petitioner's offense was not foreclosed by the charge in the initial information. Moreover, Petitioner was quite aware of the allegations of the victim. He knew the times she contended the penetrations had occurred and could certainly deduce his age at those times. Both the initial information and the amended information provided adequate notice of the charge on which he was ultimately convicted.

The record indicates that the amendment did not broaden the scope of the charges against Petitioner, it narrowed them. The amended charge was certainly included within the initial information. Petitioner was fully aware of his age when he purportedly penetrated the victim. Thus, Petitioner has not identified any prejudice that flowed from the amendment of the information. Undoubtedly, that is why his counsel conceded the prosecutor's motion to amend.

The court of appeals concluded that Petitioner waived this claim of prosecutorial misconduct:

> [D]efense counsel affirmatively stated that defendant did not have a legal objection to the amendment and that the prosecutor had a legal basis for the amendment. Defense counsel also stated that he discussed the consequences of the amendment with defendant a couple times, and defendant understood. Thus, defendant waived his challenge to the amended Information. See *People v. Carter*, 462 Mich. 206, 215; 612 N.W.2d 144 (2000).

*Barnes*, 2020 WL 7754173, at *4–5. Even if he had not waived the claim, however, Petitioner simply has presented no evidence from which the Court could conclude that any delay in amending

15

the information "so infected [Petitioner's] trial with unfairness as to make the resulting conviction a denial of due process." *See Darden*, 477 U.S. at 181. Thus, Petitioner has not shown that the court of appeals' conclusion regarding this claim of prosecutorial misconduct related to the delay in amending the information was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief.

### C.      Ground III—Jury Instructions

In his third ground for relief, Petitioner contends that the trial court violated his due process rights by providing "confus[ing] jury instructions." (ECF No. 1, PageID.9.) Petitioner avers that at trial, he "testified that he had never done more than touch [the victim] over her clothes when he was 14." (*Id.*) Petitioner asserts that the jury may have believed his testimony, but "became confused at the instruction which stated that they could only find guilt of second-degree CSC for actions after he turned 17." (*Id.*) Petitioner contends that this instruction "effectively foreclosed a not guilty verdict." (*Id.*)

The court of appeals rejected Petitioner's argument, stating:

> Defendant does not argue on appeal that the jury instruction informing the jurors that "[they] must base any conviction only upon defendant's actions after he turned 17" was legally deficient. Rather, defendant argues that the instruction confused the jurors and left them "no choice but to find the defendant guilty" because the "jury may not have understood that [defendant] could have been held accountable for [CSC-II] in a juvenile adjudication." Basically, defendant appears to argue that the jurors felt compelled to convict defendant for his confession at trial that he touched the victim's private areas over her clothes several times when he was 14 years old, so the jurors ignored the instruction that they could only consider defendant's conduct after he turned 17 years old and convicted defendant on the basis of his confession.

> However, defendant's argument is completely misplaced because the jury convicted defendant of CSC-I for penetrating the victim, not CSC-II for touching the victim. The jury's decision to convict defendant of CSC-I, rather than the lessor included offense of CSC-II, indicates that the jury did not convict defendant on the basis of his confession because defendant only admitted to touching the victim and specifically denied penetrating her. Moreover, a jury is presumed to follow its instructions and, therefore, the jury in this case would not have relied on

defendant's conduct before he turned 17 years old as the basis for its verdict. See *Unger*, 278 Mich. App. at 234. Consequently, defendant failed to demonstrate how an objection to the challenged jury instruction would have changed the jury's verdict. See *Harmon*, 248 Mich. App. at 531.

*Barnes*, 2020 WL 7754173, at *6.

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). Typically, a claim that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 155; *see also Estelle*, 502 U.S. at 75 (concluding that erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

Petitioner merely repeats the argument he raised in the court of appeals and fails to meet this difficult standard. Upon review of the record, the Court concludes that—for the very reasons identified by the court of appeals—there is nothing to suggest that the jury instruction with which Petitioner takes issue resulted in a trial so unfair that it denied Petitioner due process. Petitioner has failed to demonstrate that the court of appeals' determination regarding the jury instruction was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to relief on habeas ground III.[4]

---

[4] On appeal, Petitioner raised his claim regarding the jury instruction as an ineffective assistance of counsel claim, asserting that counsel should have objected to the instruction. *Barnes*, 2020 WL 7754173, at *6. The court of appeals rejected Petitioner's argument. *Id.* Petitioner does not assert

### D.      Ground IV—Disproportionate Sentence

As his fourth ground for relief, Petitioner asserts that his 25-year mandatory minimum is disproportionate, unreasonable, and constitutes cruel and unusual punishment. (ECF No. 1, PageID.10.) Petitioner contends that the "minimum sentence of 300 months is 342 times the maximum-minimum that should have been imposed." (*Id.*) He believes that a sentence within the guidelines would have been proportionate and that the trial court "stated no reason for departing from the guidelines range other than the new statute." (*Id.*)

The court of appeals rejected Petitioner's claim, stating:

Finally, defendant argues that the 25-year mandatory minimum sentence imposed by the trial court was disproportionate and constituted cruel and unusual punishment. We disagree.

This Court previously determined that a 25-year mandatory minimum sentence imposed for a conviction of CSC-I under MCL 750.520b(2)(b) is not disproportionate and does not violate a defendant's constitutional protections against cruel and unusual punishment. *People v. Benton*, 294 Mich. App. 191, 203–207; 817 N.W.2d 599 (2011). Because we are bound by our own published decisions, MCR 7.215(J)(1), we must follow our decision in *Benton* and continue to affirm 25-year mandatory minimum sentences for CSC-I convictions under MCL 750.520b(2)(b).

*Barnes*, 2020 WL 7754173, at *7.

The terms disproportionate and unreasonable are derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C.

---

an ineffective assistance claim in his § 2254 petition. Nevertheless, to the extent he does, "[n]o prejudice flows from the failure to raise a meritless claim." *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008). Thus, Petitioner cannot maintain any purported ineffective assistance claim premised upon counsel's failure to challenge the jury instruction at issue.

§ 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding unreasonableness and disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas

19

corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

To the extent that Petitioner asserts that his sentence violates the Eighth Amendment's proscription against cruel and unusual punishment, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

In his appellate brief, Petitioner asserted that his sentence violates *Miller v. Alabama*, 567 U.S. 460 (2012), because he was "still a teenager at the time of the offense for which he was convicted." (ECF No. 1-1, PageID.43.) In *Miller*, the Supreme Court held that the Eighth

Amendment prohibits a sentencing scheme that mandates life in prison without parole for juvenile offenders, concluding that such a scheme creates an unreasonable possibility of a disproportionate sentence. *Id.* at 479. The Court reiterated its prior recognition that "children are constitutionally different from adults for sentencing purposes." *Id.* at 471. The Court highlighted children's "lack of maturity," "underdeveloped sense of responsibility," "vulnerab[ity] . . . to negative influences and outside pressures," and that they "lack the ability to extricate themselves from horrific, crime-producing settings." *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005)) (holding that a person under 18 at the time of the crime may not be executed). In addition, the *Miller* Court repeated that, "because a child's character is not as 'well formed' as an adult's, his traits are 'less fixed[,]' and his actions are less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Id.* (quoting *Roper*, 543 U.S. at 570). The Court therefore instructed that, before sentencing a person who was a juvenile at the time of the offense to life imprisonment without parole, the sentencing court must consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

Petitioner's reliance on *Miller* does not alter the Eighth Amendment calculus set forth above. While a court may conclude that the considerations raised in *Miller* are relevant to a court's discretionary imposition of a lesser sentence on a juvenile, *Miller* does not mandate those considerations and does not clearly establish that the Eighth Amendment bars a sentence of 25 to 48 years' imprisonment on a juvenile who was at least 17 years old at the time of the offense. Both before and after *Miller*, proportionality review under the Eighth Amendment is limited to cases involving a sentence of death or life imprisonment without parole. Petitioner, therefore, is not entitled to relief for habeas ground IV.

E.       **Ground V—Sentencing Errors**

As his last ground for relief, Petitioner contends that inaccuracies in his guidelines violated his state and federal constitutional rights. (ECF No. 1, PageID.12.) Specifically, Petitioner takes issue with OV 11 being scored at 50 "for two or more criminal sexual penetration[s]" because, he asserts, there was no evidence presented at trial that "two or more sexual penetrations arose out of the sentencing offense." (*Id.*)

As noted *supra*, the court of appeals agreed with Petitioner, concluding that the trial court erred by assessing 50 points for OV 11. *Barnes*, 2020 WL 7754173, at *7. The court of appeals remanded for the ministerial task of correcting the PSIR. *Id.* The court, however, affirmed Petitioner's conviction and sentence, noting that despite the sentencing guidelines error, the "trial court was required to impose a mandatory 25-year minimum sentence for [Petitioner's] CSC-I conviction pursuant to MCL 750.520b(2)(b)." *Id.*

Claims concerning the improper application of sentencing guidelines are state law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (concluding that alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Petitioner's claim regarding OV 11 is plainly correct because the Michigan Court of Appeals agreed with Petitioner. As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of

state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

The error of which Petitioner complains has been corrected, and he has received all the relief to which he is entitled on this claim. Moreover, Petitioner's claim regarding the inaccuracy of the sentencing guidelines is mooted by the fact that he was not sentenced pursuant to the guidelines, but instead was sentenced to the 25-year mandatory minimum sentence prescribed by statute. As discussed above, Petitioner's constitutional claim regarding his sentence—that it violates the Eighth Amendment—lacks merit. Petitioner, therefore, is not entitled to relief on habeas ground V.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full

23

merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.


Dated:   <u>February 27, 2023</u>                    <u>/s/ Jane M. Beckering</u>
                                                    Jane M. Beckering
                                                    United States District Judge